J-S78005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT FENNELL, | |
| Appellant | No. 1280 WDA 2015 |

Appeal from the PCRA Order Entered July 21, 2015
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0001935-2009

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT FENNELL, | |
| Appellant | No. 1379 WDA 2015 |

Appeal from the PCRA Order Entered July 27, 2015
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0001935-2009

BEFORE: BENDER, P.J.E., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED DECEMBER 02, 2016**

Appellant, Robert Fennell, appeals from the July 27, 2015 order denying his petition filed under the Post Conviction Relief Act, 42 Pa.C.S. §§

_____

[*] Former Justice specially assigned to the Superior Court.

9541-9546.[1]  Appellant raises multiple issues, including several claims of ineffective assistance of counsel (IAC).  After careful review, we affirm the order entered at docket 1379 WDA 2015, and quash the appeal docketed at 1280 WDA 2015.

This Court previously summarized the facts underlying Appellant's case, as follows:

> On January 24, 2009, Appellant, while a prisoner in the State Correctional Institution [("SCI")] at Cresson, Pennsylvania, punched a Corrections Officer, Russell Bollinger [("C.O. Bollinger")], in the face.  This assault was not only witnessed by several people, but also recorded on a security camera videotape.  At trial, [C.O.] Bollinger testified that he was struck in the jaw by Appellant, the force of which caused him to fall down onto a nearby metal bench.  A "ruckus" ensued, during which time Appellant "managed to get an arm round [C.O. Bollinger's] neck to try to choke" him.  The melee ended with correction officers wrestling Appellant to the floor, and restraining him with handcuffs.  As a result of this incident, [C.O.] Bollinger "tore the muscles in the right side of [his] back."  He further testified that as a result of his injuries he could not get off his "couch for about three days," and missed "about two weeks" of work.

---

[1] Appellant filed two notices of appeal - one from an order purportedly entered on July 21, 2015, and one from the PCRA court's order entered on July 27, 2015.  Those notices of appeal were docketed at 1280 WDA 2015 and 1379 WDA 2015, respectively.  This Court *sua sponte* consolidated Appellant's appeals on October 19, 2015.  Our review of the certified record confirms that the PCRA court did not enter any order on July 21, 2015.  Rather, the order denying Appellant's petition was entered on July 27, 2015.  All of Appellant's issues relate to the July 27, 2015 order denying his petition.  Consequently, we quash Appellant's appeal docketed at 1280 WDA 2015, and our disposition herein relates only to his appeal docketed at 1379 WDA 2015.

At trial, Appellant offered a somewhat hybrid defense, alternately claiming that he was either justified or under duress when he assaulted [C.O.] Bollinger. He asserted that he had previously been a target of retaliatory conduct from corrections officers, during which time they had abused him, and that that conduct precipitated his striking of [C.O.] Bollinger.

***Commonwealth v. Fennell***, No. 186 WDA 2011, unpublished memorandum at 1-2 (filed March 19, 2012) (citations to the record omitted).

Based on these facts, Appellant was convicted, following a nonjury trial, of two counts of aggravated assault, and one count each of simple assault, assault by a prisoner, resisting arrest, and recklessly endangering another person. On August 10, 2010, he was sentenced to an aggregate term of 10 to 20 years' incarceration. Appellant filed a timely direct appeal, and we affirmed his convictions. ***See Fennell, supra***.[2] Appellant did not file a petition for allowance of appeal with our Supreme Court. However, he later sought reinstatement of his right to do so in a timely-filed PCRA petition, which the PCRA court granted. ***Id.*** Appellant then filed a *nunc pro*

_____

[2] We did, however, vacate Appellant's sentence for simple assault, concluding that that offense merged, for sentencing purposes, with Appellant's conviction of aggravated assault on C.O. Bollinger. ***See Fennell***, No. 186 WDA 2011, unpublished memorandum at 12. We also vacated the sentence imposed by the court for Appellant's second count of aggravated assault, concluding that the trial court had improperly "imposed separate sentences upon Appellant for the same conduct based upon the conclusions that [he] violated two separate subsections of the aggravated assault statute[,] … which constitutes an illegal sentence." ***Id.*** at 12-13. Our decision to vacate Appellant's sentences for simple assault and one count of aggravated assault did not alter his aggregate term of 10 to 20 years' imprisonment; thus, we did not remand for resentencing. ***Id.*** at 14 n.7.

- 3 -

*tunc* petition for allowance of appeal, and the Supreme Court ultimately denied that petition. ***Commonwealth v. Fennell***, 72 A.3d 600 (Pa. 2013).

On May 9, 2014, Appellant filed the *pro se* PCRA petition that underlies the present appeal. Counsel was appointed, and an amended petition was filed in August of 2014 presenting, *inter alia*, multiple IAC claims. A PCRA hearing was conducted on May 20, 2015. Appellant was the only witness to testify at that proceeding. On July 27, 2015, the PCRA court entered an order denying Appellant's petition, concluding that he "failed to satisfy his burden of demonstrating ineffectiveness because he failed to produce evidence that counsel's chosen course of action lacked a reasonable basis designed to effectuate [Appellant's] interests." PCRA Court Order, 7/27/15, at 1-2 (citation omitted).

Appellant filed a timely notice of appeal, and also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant raises the following seven questions for our review:

> A. Whether the PCRA [c]ourt erred and abused its discretion by failing to find Appellant's constitutional rights were violated by his arrest through summons?
>
> B. Whether the PCRA [c]ourt erred and abused its discretion by failing to find [that] Appellant's trial counsel was ineffective for failing to call witnesses on his behalf?
>
> C. Whether the PCRA [c]ourt erred and abused its discretion by failing to find [that] Appellant's trial counsel was ineffective for failing to properly investigate the abuse perpetrated upon Appellant by the correctional officers at SCI Cresson?

D. Whether the PCRA [c]ourt erred and abused its discretion by failing to find [that] Appellant's trial counsel [was] ineffective for failing to move the court to limit the introduction of surveillance video against Appellant?

E. Whether the PCRA [c]ourt erred and abused its discretion by failing to find [that] Appellant's trial counsel failed to properly impeach [C.O.] Bollinger regarding his interaction with Appellant in the months before the incident?

F. Whether the PCRA [c]ourt erred and abused its discretion by failing to find [that] Appellant's trial counsel was ineffective for failing to remove himself from Appellant's case, as he had a personal relationship with the alleged victim?

G. Whether the PCRA [c]ourt erred and abused its discretion by failing to grant Appellant's request for discovery contained within his [a]mended [PCRA] [p]etition…?

Appellant's Brief at 4-5.

To begin, our standard of review regarding an order denying post-conviction relief under the PCRA is whether the determination of the court is supported by the evidence of record and is free of legal error. *Commonwealth v. Ragan*, 923 A.2d 1169, 1170 (Pa. 2007). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001).

In Appellant's first issue, he contends that "the procedure used to secure his appearance at his preliminary hearing was unlawful." Appellant's Brief at 10. Specifically, Appellant asserts that because he was charged with felony offenses, Pennsylvania Rule of Criminal Procedure 509 required that a warrant for his arrest be issued, yet he only "received a summons in the mail advising him to report to the preliminary hearing." Appellant's Brief at

11; *see also* Pa.R.Crim.P. 509(2)(a) (requiring the issuing authority to issue a warrant for arrest when "one or more of the offenses charged is a felony or murder").

Appellant does not offer any meaningful discussion of how his constitutional rights were violated by the issuance of a summons, rather than a warrant for his arrest. He also does not explain why this claim could not have been raised at the preliminary hearing, before the trial court, or on direct appeal. Consequently, we conclude that he has waived his challenge to the purported deficiency in how he was summoned to attend the preliminary hearing.[3] *See* 42 Pa.C.S. § 9543(a)(3) (stating that, to be eligible for PCRA relief, the petitioner must plead and prove "[t]hat the allegation of error has not been previously litigated or waived"); 42 Pa.C.S. § 9544(b) (stating that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state post[-]conviction proceeding").

_____

[3] To the extent Appellant suggests that his trial counsel was ineffective for not raising this ostensible deficiency, *see* Appellant's Brief at 11, that claim was not raised in his Rule 1925(b) statement. Therefore, for that reason, it is also waived. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

Appellant's next five issues allege [the] ineffective assistance of his trial counsel, Kenneth Sottile, Esq. We review such claims under the following standard:

> [A] PCRA petitioner will be granted relief [on such a claim] only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [**Commonwealth v.**] **Colavita**, 606 Pa. [1,] 21, 993 A.2d [874,] 886 [(Pa. 2010)] (citing **Strickland**[ **v. Washington**, 104 S.Ct. 2053 (1984)]). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [515 Pa. 153, 527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, [620] Pa. [60, 73], 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **See Ali, supra**. Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Colavita**, 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." **Commonwealth v. King**, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable

probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" **Ali**, 608 Pa. at 86–87, 10 A.3d at 291 (quoting **Commonwealth v. Collins**, 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing **Strickland**, 466 U.S. at 694, 104 S.Ct. 2052)).

**Commonwealth v. Spotz**, 84 A.3d 294, 311-12 (Pa. 2014).

In Appellant's second issue on appeal, he maintains that Attorney Sottile acted ineffectively by not calling "Ms. Alderman, [Appellant's] counselor[,]" as a witness at trial. Appellant's Brief at 12. Appellant claims that he told Ms. Alderman about the abuse he suffered at the hands of correctional officers and, therefore, "[h]er [testimony] would have been instrumental in explaining to the court why [Appellant] felt the need to use force in protecting himself against the correctional officers." **Id.** Appellant speculates that "Attorney Sottile took no steps in seeking [this witness] out." **Id.** Appellant also stresses that "Attorney Sottile did not subpoena Ms. Alderman, and was not present at the evidentiary hearing to explain his inaction." **Id.**

Appellant's argument fails for several reasons. Initially, he did not call Ms. Alderman to the stand at the PCRA hearing to verify that she would have been willing to testify at his trial, and that her testimony would have benefitted his defense. Accordingly, Appellant has not proven that Attorney Sottile was ineffective for failing to call her to the stand at trial. **See Commonwealth v. Washington**, 927 A.2d 586, 599 (Pa. 2007) ("To establish that counsel was ineffective for failing to call a witness, [an] [a]ppellant must demonstrate that: (1) the witness existed; (2) the witness

- 8 -

was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; **(4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.**") (citation omitted; emphasis added).

Additionally, Appellant seemingly suggests that Attorney Sottile had a duty to attend the PCRA hearing and defend his decision not to call Ms. Alderman to the stand. Appellant is incorrect; it is well-established that we **presume** that Attorney Sottile acted effectively, and the burden rests solely with Appellant to prove otherwise. **See Washington**, 927 A.2d at 599 ("Failure to call a witness is not *per se* ineffective assistance of counsel, for such a decision implicates matters of trial strategy. It is [the] [a]ppellant's burden to demonstrate that trial counsel had no reasonable basis for declining to call [the] … witness."). Here, Appellant chose not to call Attorney Sottile to the stand at the PCRA hearing. Nothing in the record suggests that Attorney Sottile was unavailable to testify at that proceeding. Instead, Appellant's PCRA counsel stated at the end of the hearing that he believed he was "not required to call" Attorney Sottile to prove Appellant's IAC claims. N.T. PCRA Hearing, 5/20/15, at 58. PCRA counsel instead believed that he could solely rely on Appellant's testimony to establish counsel's ineffectiveness. **Id.**

Unfortunately for Appellant, his testimony alone is insufficient to prove that Attorney Sottile's decision not to call Ms. Alderman to the stand

amounted to ineffective representation. As the Commonwealth points out, Attorney Sottile "may have believed that [Ms. Alderman's testimony] would ultimately hurt [Appellant's] case by not supporting his fanciful allegations of abuse" by the correctional officers. Commonwealth's Brief at 6. Because Appellant failed to call Attorney Sottile to testify at the PCRA hearing, there was no evidence regarding why counsel chose not to call Ms. Alderman, nor any way to determine if his decision was unreasonable. Consequently, Appellant's first IAC claim fails.

The same is true for Appellant's next claim of ineffectiveness, in which he argues that Attorney Sottile failed to properly investigate the abuse that Appellant claims he suffered at the hands of correctional officers at SCI Cresson. Appellant again *speculates* that Attorney Sottile failed to investigate his abuse allegations, stating that "*[t]o [Appellant's] knowledge*, Attorney Sottile did not seek out any information regarding the abuse…." Appellant's Brief at 14 (emphasis added). Appellant failed to present any evidence at the PCRA hearing to support his bald assertion that Attorney Sottile failed to sufficiently investigate his claims of abuse. Indeed, he even attached to his amended petition a document that proves the opposite conclusion. Specifically, Appellant attached a letter drafted by the Department of Corrections (DOC) in response to a request from Attorney Sottile for various documents, including any records of abuse complaints made by Appellant and/or other inmates against correctional officers. *See* Attachments to Appellant's Amended PCRA Petition/Petition for Discovery,

filed 8/13/14. Therefore, Appellant's own petition belies his unsupported assertion that Attorney Sottile failed to investigate his allegations that he was abused by correctional officers.

In Appellant's fourth issue, he asserts that Attorney Sottile was ineffective because counsel "took no action to limit introduction of the video of the incident." Appellant's Brief at 15. According to Appellant, the video should have been suppressed because "there were elements [of] the [incident] that the video did not show, such as the presence of a[ Restrictive Housing Unit] team member who was previously present during the prior abuse of [Appellant]. [The video] also did not show [Appellant's] offering to 'lock-in' in his cell, in an effort to avoid further confrontation with the correctional officers." *Id.*

Other than his own self-serving testimony, Appellant proffered no evidence to establish that the video admitted by the Commonwealth was distorted or manipulated; therefore, he has not proven that Attorney Sottile had any basis on which to seek suppression of that video. **See Commonwealth v. Jones**, 942 A.2d 903, 909 (Pa. Super. 2008) ("[W]here an assertion of ineffective assistance of counsel is based upon the failure to pursue a suppression motion, proof of the merit of the underlying suppression claim is necessary to establish the merit of the ineffective

assistance of counsel claim.") (internal quotation marks and citation omitted).[4]

Next, Appellant contends that Attorney Sottile was ineffective because he "did not question the victim about any specific prior interaction he had had with [Appellant], nor did he inquire about how the victim had treated him prior to [the] January 2009 assault. Attorney Sottile simply accepted that the victim asserted [that] he did not recall having contact with [Appellant]." Appellant's Brief at 16. Appellant goes on to state: "Not having testified at the evidentiary hearing, Attorney Sottile could offer no reasonable explanation for not having inquired into the subject more during his cross-examination of the victim." *Id.*

Again, Appellant's decision not to call Attorney Sottile to the stand at the PCRA hearing does not now permit him to argue that counsel had no reasonable basis for the way in which he cross-examined C.O. Bollinger. In any event, Appellant acknowledges that Attorney Sottile asked C.O. Bollinger

---

[4] Within this same issue, Appellant also contends that Attorney Sottile acted ineffectively because there is no "evidence that he attempted to obtain views from other cameras on the block for a more complete version of the incident." Appellant's Brief at 15 (emphasis added). This specific assertion was not raised in, nor suggested by, Appellant's Rule 1925(b) statement, which only declared that "trial counsel [was] ineffective for failing to move the court to limit the introduction of surveillance video against [Appellant]." Pa.R.A.P. 1925(b) Statement, 9/17/15, at 1 (unnumbered). Therefore, this argument is waived. *See* Pa.R.A.P. 1925(b)(4)(vii).

if he had had any prior contact with Appellant, to which the officer stated, "No, I can't remember ever having any kind of interaction with him." N.T. Trial, 6/24/10, at 44. Attorney Sottile then asked the officer if he had ever written Appellant up or searched his cell. *Id.* C.O. Bollinger replied that it was possible, but again stated that he could not "remember [Appellant] at all." *Id.* Nothing in the record of the trial, nor the evidence presented at the PCRA hearing, suggests that C.O. Bollinger would have admitted to previously abusing Appellant, if only Attorney Sottile had specifically questioned him about that alleged abuse. Thus, Appellant has not proven that counsel acted unreasonably by not asking C.O. Bollinger such questions, or that he was prejudiced by Attorney Sottile's failure to do so.

In Appellant's fifth issue, he contends that Attorney Sottile was ineffective for not withdrawing when counsel had "an actual - rather than mere[ly] potential - conflict of interest." Appellant's Brief at 16. According to Appellant, Attorney Sottile sent him a letter prior to trial informing Appellant that counsel had a "personal relationship" with the victim. *Id.* at 17. Appellant claims that he "voiced his concern about the conflict, but Attorney Sottile ignored his complaint." *Id.* (citing N.T. PCRA Hearing at 39). Appellant avers that "Attorney Sottile should have withdrawn after discovering he knew the victim." *Id.*

Initially, Appellant overstates that Attorney Sottile's letter indicated he had a 'personal relationship' with C.O. Bollinger. In the letter, counsel stated:

The last thing I wanted to bring up is that in reviewing the file I recalled that C.O. Bollinger used to be a section boss at a coalmine [*sic*] where I was the mine payroll clerk. I know him as one of the bosses, occasionally spoke to him at the mine but never socialized with him or saw him outside the mine. That was over 25 years ago and I did not see him since then. I don't believe it is a problem but I felt it appropriate to point it out to you to see if you would have a problem or concern about it.

*See* N.T. PCRA Hearing at Exhibit No. 1 (attached to transcript).

We disagree with Appellant that this letter demonstrates an 'actual conflict' in Attorney Sottile's representation of him. Attorney Sottile stated that he worked for the same company as C.O. Bollinger 25 years earlier, and that he 'occasionally' spoke to the officer, but did not socialize with him outside of work. This does not support Appellant's claim that a 'personal relationship' existed between C.O. Bollinger and Attorney Sottile at the point when they worked together, let alone 25 years later when Attorney Sottile represented Appellant. Thus, Appellant has not demonstrated that counsel "actively represented conflicting interests...." ***Commonwealth v. Collins***, 957 A.2d 237, 251 (Pa. 2008) ("To show an actual conflict of interest, the appellant must demonstrate that: (1) counsel "actively represented conflicting interests"; and (2) those conflicting interests "adversely affected his lawyer's performance.") (citation omitted).

Additionally, Appellant also cannot show that Attorney Sottile's performance was "adversely affected" by this perceived conflict of interest. ***Id.*** Appellant states that, "Attorney Sottile failed to properly cross-examine [C.O. Bollinger] at trial; his personal relationship with the victim may have

played a role in this failure." Appellant's Brief at 17. Appellant's speculation about Attorney Sottile's motives in cross-examining C.O. Bollinger fails to meet his burden of proving he was prejudiced by the purported conflict of interest between the officer and counsel. Thus, Attorney Sottile was not ineffective for not withdrawing from representing Appellant due to this alleged conflict of interest.

In Appellant's final issue on appeal, he avers that the PCRA court erred by denying his petition for discovery.

> In PCRA proceedings, discovery is only permitted upon leave of court after a showing of exceptional circumstances. 42 Pa.C.S.A. § 9545(d)(2); Pa.R.Crim.P. 902(E)(1). The PCRA and the criminal rules do not define the term "exceptional circumstances." Rather, it is for the trial court, in its discretion, to determine whether a case is exceptional and discovery is therefore warranted. ***Commonwealth v. Dickerson***, 900 A.2d 407, 412 (Pa. Super. 2006).
>
> We will not disturb a court's determination regarding the existence of exceptional circumstances unless the court abused its discretion. ***Commonwealth v. Lark***, 560 Pa. 487, 746 A.2d 585, 591 (2000). An abuse of discretion is not a mere error in judgment. ***Commonwealth v. Riley***, 19 A.3d 1146, 1149 (Pa. Super. 2011). Instead, it is a decision based on bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law. ***Id.*** Moreover, we recall that the appellant has the duty to convince us an abuse occurred. ***Commonwealth v. Bennett***, 19 A.3d 541, 543 (Pa. Super. 2011).

***Commonwealth v. Frey***, 41 A.3d 605, 611 (Pa. Super. 2012).

In this case, Appellant claims that the 'exceptional circumstance' warranting discovery is a report issued by the U.S. Department of Justice (DOJ), in which the DOJ found that inmates suffering from 'serious mental

illness' had been mistreated at SCI Cresson, specifically through the institution's use of isolation, excessive force, and other abusive tactics. ***See*** "Investigation of the State Correctional Institution at Cresson and Notice of Expanded Investigation," 5/31/13 (attached to Appellant's "Petition for Discovery Pursuant to Pa.R.Crim.Pro. 902(E)(1), filed 8/13/14). Based on the DOJ's report, Appellant requested discovery of various documents, including,

> background reports on the correctional officers, the investigative reports of the incident, any reports of assaults on staff members or other inmates at SCI Cresson in 2009 and 2010, personnel files of the correctional officers involved in the incident, shift assignment sheets of the officers, pictures of the cell [Appellant] was taken to in the restricted housing unit (RHU), and the full video of the incident.

Appellant's Brief at 18. According to Appellant, had the court granted discovery of these items, he "would have been able to demonstrate the abusive nature of the correctional officers involved, thus bolstering his claim that he needed to use force to defend himself." ***Id.***

After conducting a hearing on Appellant's petition for discovery, the PCRA court ultimately concluded that the DOJ report did not constitute an 'exceptional circumstance' warranting discovery of the materials requested by Appellant. We ascertain no abuse of discretion in that decision. The DOJ report relied upon by Appellant was issued over four years after the incident underlying his convictions. The report addressed abuse inflicted on inmates designated by SCI Cresson officials as suffering from 'serious mental illness.' Appellant has never alleged, nor presented any evidence to prove, that he

suffers from a serious mental illness, or that he was designated as such by SCI Cresson officials. Consequently, the PCRA court did not abuse its discretion in concluding that the DOJ report did not constitute an 'exceptional circumstance' warranting discovery in this case.

In any event, we also point out that even if the PCRA court had granted Appellant's discovery request, any evidence he would have unearthed could not possibly support a claim of self-defense. We have reviewed the video recording of the incident underlying Appellant's convictions. That video shows two correctional officers approach Appellant and exchange words with him, after which the officers walk down a staircase and out of the camera's view. For the next few minutes, Appellant - who is 6'8" tall and weighs 280 pounds - walks in and out of a cell. Appellant then walks down the steps and toward the two officers, who are standing at a desk and talking. Appellant walks up to C.O. Bollinger and punches the officer in the face. C.O. Bollinger falls to the ground as two other officers converge on Appellant. Appellant resists the officers' attempts to subdue him, and when C.O. Bollinger then joins in on the struggle, Appellant puts him into a headlock. It takes several minutes, and the assistance of multiple officers, to finally subdue and handcuff Appellant.

Based on this video, we fail to see - and Appellant does not explain - how evidence that C.O. Bollinger had previously abused him would assist Appellant in proving that his attack on C.O. Bollinger was justified in the moment in which Appellant struck the unsuspecting officer. *See* 18 Pa.C.S.

§ 505(a) ("The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion."). Consequently, the PCRA court did not abuse its discretion in denying Appellant's request for discovery in order to uncover evidence that such abuse occurred.

In sum, none of Appellant's seven claims on appeal demonstrates that the PCRA court erred or abused its discretion in denying his petition for post-conviction relief. Accordingly, we affirm the court's order.

Order entered at docket 1379 WDA 2015 affirmed. Appeal docketed at 1280 WDA 2015 quashed.

Judge Ott joins this memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2016